WALTER K. WOODEN v. ALEXANDER KERR ET AL.

*Executors and administrators—Will—Appointment of trustee—
Accounting—Estoppel.*

A testator willed his entire property to a father and son in trust,
the terms of which were fully set forth in the will, of which
he appointed them joint executors. The will was probated on
the petition of the son of the testator, and the father and son
were appointed executors, and accepted and qualified as such,
and took and retained possession of the property for about four
years, when the son died, and the father remained in possession
for about six months, when he resigned as executor, and an
administrator was appointed, to whom he paid an amount
agreed upon on a settlement had between them. During their
joint possession the father and son proceeded with the
execution of the trust as fully and effectually as they could
have done if they had not been executors. The son was the
active manager of the trust property, and filed an account in
the probate court about two years and a half before his death,
which was never acted upon. The father filed an account in
the name of himself and son after the son's death, and about
the time of his resignation, which was disallowed. On the

petition of the testator's grandson, to whom the trust property was to be conveyed on his attaining his majority, a final accounting was had with the administrator, and he was discharged, and the property was turned over to the grandson, who afterwards filed a bill for an accounting with the father as surviving trustee, and on the hearing the father was decreed to be a trustee, and an accounting was directed, and he was ordered to transfer the lands to the grandson by a proper conveyance. And in affirming the decree the Court hold:

*a*—The will created the trust, appointed the trustees, and fixed their duties; and no action of any court was necessary to complete the trust in them.

*b*—Equity will not permit the father to refuse an accounting as trustee because the same instrument which made him a trustee also made him an executor, in which latter capacity he neglected for several years to render an account, it being immaterial in which capacity he is held, as his liability is the same; and, as his acts and conduct have been entirely consistent with his obligation as trustee, he cannot complain when his *cestui que trust* calls him to an account in a court of equity.

*c*—The settlement with and payment to the administrator is no defense. It was the administrator's duty to receive any and all property in the father's hands belonging to the estate, but he could bind neither the complainant nor the estate by such settlement, the probate court alone having power to allow the father's account as executor and discharge his bond, and complainant alone could settle with him for his doings as trustee

*d*—The receipt of the property on the final settlement with the administrator did not estop the grandson from requiring an accounting by the father for the moneys and property that came into his hands, but he will be allowed on such accounting for all of the money and property turned over to the administrator, and for all which he expended for the benefit of the grandson and the estate, and must account for all received by him, including rents and profits.

Appeal from Ingham.   (Newton, J., presiding.)   Submitted on briefs February 5, 1892.   Decided April 8, 1892.

Bill for an accounting by defendant Kerr as trustee. Defendant Kerr appeals. Decree affirmed. The facts are stated in the opinion.

*Haynes & Prosser (Jay P. Lee* and *Parkinson & Day,* of counsel), for complainant, contended:

1. An executor or administrator is an officer of the law, and appointed by public authority, although nominated in the will; citing 1 Woer. Adm. § 10.

2. The trustees as such received their authority from the will; the property was devised to them; and neither the probate nor any other court could give them any further title, claim, or right. They have never declined to accept the trust, and the law presumes that every conveyance, whether in trust or not, is accepted by the grantee; citing 1 Perry, Tr. § 259; and they accepted as executors, and performed acts which the trustees alone were authorized to perform, and such acceptance was also an acceptance as trustees; citing 1 Perry, Tr. § 260; *Earle v. Earle,* 93 N. Y. 104.

3. The refusal to accept as trustees should be affirmatively shown, which has not been done, and defendant Kerr is estopped from now asserting that he did not accept the trust. Complainant had no remedy in probate court. The defendant has remained silent for seven or eight years, never expressly refusing the trust nor applying to the court having jurisdiction to be relieved, and only after complainant has filed his bill for the enforcement of the trust does he declare his refusal to accept.

4. The title to the land was and is in the trustees, or the survivor of them; citing How. Stat. § 5578; and, if a decree had been made appointing a successor, it would have been necessary that the trustee convey the trust estate to his successor, either by conveyance or by making the decree operative to that end.

*A. J. Sawyer,* for appellant, contended:

1. Kerr was never trustee, and no title vested in him. A trustee does not become such by nomination merely, but by accepting the trust; citing *Trask v. Donoghue,* 1 Aik. (Vt.) 370.

2. Our statute differs from that of New York and some of the other states, in that the executor or trustee named in the will derives his power from the probate, and not from the will. He is not permitted to meddle with the estate, or act at all, unless he accepts the trust and gives bond; citing How. Stat. § 5837.

3. In voluntary trusts, no title vests in the proposed trustee, by whatever instrument it is attempted to be transferred, unless he expressly or by implication accepts the office, or in some way assumes its duties and liabilities; citing 1 Perry, Tr. § 259;

and if Kerr ever accepted this trust, it is incumbent upon complainant to prove it; citing *Johnson v. Farley,* 45 N. H. 505.

4. The way in which acceptance is proved, where there is no statute upon the subject, is—

    *a*—By express acceptance.

    *b*—By parol evidence of such acts and facts as tend to prove such acceptance.

Waiving the statutes for the present, we submit that there is nothing in the record or in the case tending to show such an acceptance by the defendant. It may be claimed that by probating the will and accepting the executorship the Kerrs accepted also the trusteeship. In the examination of this question it must be remembered that the will creates two offices, namely, that of executor and of trustee, and that both are conferred upon the same individuals. The devise of the trust estate is not to the executor *eo nomine,* but to the Kerrs personally, who are also made executors. In such a case the relation of trustee to the estate is as entirely different and distinct from that of executor as it would have been had different individuals been named for the separate offices; citing 1 Perry, Tr. § 281; *Knight v. Loomis,* 30 Me. 204; *Trustees v. Fisher,* Id. 523, 526; *Groton v. Ruggles,* 17 Id. 137; *Mastin v. Barnard,* 33 Ga. 520; *Perkins v. Moore,* 16 Ala. 9; *Perkins v. Lewis,* 41 Id. 649; *Wheatly v. Badger,* 7 Penn. St. 459; *De Peyster v. Clendining,* 8 Paige, 295.

5. It has been held, in the absence of the statutes hereafter noticed, if a person named as executor procure probate of the will he thereby constitutes himself its executor, and if he is appointed by the will executor, and a trust is attached to the office of executor, and he procures such probate, he thereby becomes executor and trustee. But it is a further rule on this subject that the same person may be appointed both executor and trustee in such a manner that he may accept one of the offices and decline the other. If from the will it appears that the testator intended to give his trustee a distinct and independent character, like the will under consideration, probate of the will by the executor will not make him trustee, unless he also accept the trust and qualify himself according to the law; citing 1 Perry, Tr. § 262.

6. Defendant Kerr did not probate the will, but, if he had, the offices being as distinct as if conferred upon separate individuals, it would have been no acceptance of the office of trustee. If the will had made the son executor, and the father trustee, it could not be claimed that, because the son probated the will, the father accepted the trusteeship thereunder. It will also be

remembered that in this State executors and trustees are required to qualify and give bonds; citing How. Stat. §§ 5834, 5835, 6801–6806; and in such jurisdictions an executor, who is also a trustee under the will, cannot be considered as holding any part of the assets as trustee until he has settled his account in probate court as executor, and been credited with the amount as executor, and charged with the same as trustee; citing 1 Perry, Tr. § 263; *Hall v. Cushing*, 9 Pick. 395; *Prior v. Talbot*, 10 Cush. 1; *Perkins v. Moore*, 16 Ala. 9.

7. The statute provides that whenever it shall become necessary or convenient, in the settlement or distribution of the estate of a deceased person, to appoint a trustee to take charge of or invest and distribute any portion of such estate, the judge of probate shall have power, and it shall be his duty, upon application of any person interested in the estate, to appoint such trustee; citing How. Stat. § 6801; and it is further provided, by section 6803, that every such trustee shall, before he enters upon the execution of his trust, and before the warrant of his appointment is delivered to him, give bonds, etc.; and the subsequent sections point out the duties of such trustee, and provide for his compensation and for putting his bond in suit. Most of the other states have similar statutes, because of which even testamentary trustees in American practice must qualify and receive letters from the probate court before they are empowered to act, even though the same person be constituted executor and trustee in due form, as preliminary to holding and managing the office in his new capacity as trustee; citing Schouler, Ex'rs, § 485; *In re Robinson*, 37 N. Y. 263; 1 Perry, Tr. § 262; and where such statutes are in force, executors and trustees have no power or authority to act without appointment by the probate court, and a refusal or neglect to qualify by giving bonds will be considered a refusal and disclaimer of the trust; citing 1 Perry, Tr. § 262; Schouler, Ex'rs, § 485; 7 Amer. & Eng. Cyc. Law, 200; 1 Lew. Tr. 196, note 1.

8. By his answer Kerr disclaims. The rule seems to be that, if a trustee does no act in the office, he is not required to disclaim within any particular time, and when the disclaimer is made it will prevent the estate vesting in him; and it is accordingly held that "a trust may be disclaimed at the bar of the court, and by counsel, or by answer;" citing 1 Perry, Tr. §§ 267, 271.

9. So far as the effort is made by the bill and decree to settle the estate of Elias Kerr, we submit that estates of deceased persons are not settled in equity, but in probate court, under our

practice; citing *Wales v. Newbould,* 9 Mich. 45; *Holbrook · v. Campau,* 22 Id. 288; *Patton v. Bostwick,* 39 Id. 218; *Kellogg v. Aldrich,* Id. 576; *Hill v. Mitchell,* 40 Id. 389; *Shelden v. Walbridge,* 44 Id. 251; *Dickinson v. Seaver,* Id. 624; *Shannon v. Shannon,* 48 Id. 182; *Cole v. McFall,* Id. 227; *Aldrich v. Annin,* 54 Id. 230.

10. Complainant having upon his own petition, in which he states that the estate belongs to the heirs at law, of whom he is one, by the order of the probate court made in his presence and by his consent, and without notice to Kerr or giving him an opportunity to be heard in opposition thereto, obtained as such heir of the testator the entire trust estate, which he still retains, he is now estopped from claiming that the estate did not belong to the heirs, and thereby recovering the same estate the second time as *cestui que trust;* citing 1 Herm. Estop. §§ 285, 287; *Matlow v. Cox,* 25 Tex. 578.

11. Complainant could have pursued the remedy he now invokes as well before he obtained the trust estate through the probate court as after, or he could, as he did, pursue the remedy he did in probate court. If he has this remedy now, he had both remedies then; and when a party has two or more remedies for the same wrong, in which the measure of damages might ·be different, an election of one, and pursuing it to judgment, is a bar to the other remedy; citing *Milroy v. Mining Co.,* 43 Mich. 231; *Finn v. Peck,* 47 Id. 208; *Martin v. Boyce,* 49 Id. 122; *Brick v. Plymouth Co.,* 63 Iowa, 462.

12. The probate court has power to construe the will, and by decree distribute the estate to such persons as are by law entitled to it; citing How. Stat. § 5964; *Byrne v. Hume,* 84 Mich. 185; and the decree deciding the estate to be intestate, and distributing it to the heirs, instead of the *cestui que trust,* not being appealed from, is conclusive against all the world; citing 1 Herm. Estop. § 366, p. 424.

GRANT, J. Bill in equity for an accounting by defendant Kerr as trustee, and for a conveyance by him to the complainant of the trust property, real and personal. Rayner and Tefft are made defendants as mortgagees of the real property held in trust by Kerr. King is made defendant as administrator with the will annexed and as trustee.

The trust was created by the will of one Elias Kerr,

executed September 20, 1880. The will was admitted to probate June 21, 1882. After providing for the payment of his debts, funeral expenses, and for grave-stones, the will contained the following provisions:

"*Second.* All the rest, residue, and remainder of my property, both real and personal, wheresoever situate, I hereby give, devise, and bequeath forever to my brother, Alexander Kerr, of Lodi, Washtenaw county, Mich., and to his son, Alexander Kerr, Jr., and to the survivors of them (whom I hereby appoint joint executors of this, my last will), in trust, nevertheless, as follows:

1. To receive, from time to time, the rents, issues, and profits of my estate; to invest, change investments, collect, call in, reinvest the same; to sell and convey, on such terms and for such price as they shall approve, a part of my said farm (not over 140 acres thereof), in their discretion; also sell (if it be mine at my decease) the said house and lot in Lansing, and convey the same on same terms as above; and to hold the avails and all personal property and money during the continuance of this trust.

"2. To allow my son, John M. Kerr, to have a home and his own personal support and maintenance from the avails of the said Ingham farm and the personal property thereon, or the use of so much of it as shall not be sold off, for and during the term of his natural life; and in case of severe sickness, accidents not to be foreseen, or great personal misfortune, my said trustees may, in their discretion, use a further sum of money for his personal comfort, not amounting to over $100 annually. But all this provision for my son, John, under this will, is to be purely personal to him, and is not to be aliened, mortgaged, anticipated, or in any wise incumbered by him, or any part of it; and my trustees aforesaid are hereby charged not to tolerate or allow or in any way recognize any such alienation, incumbrance, mortgage, or transfer; and if my said son, John M. Kerr, do make any such attempt by executing, while of sound mind, any instrument of writing with intent to alienate, mortgage, or incumber any part of his claim derived from me under this will, then and in that case this entire clause, and the whole provision for his benefit, is to be null and void, and of no effect whatever.

"3. In case the property, or the avails thereof, of my grandson, Walter K. Wooden, shall for any reason fail to yield him, during his minority, adequate support, maintenance, and education, then said trustee, Alexander Kerr, Jr. (whom I hereby appoint testamentary guardian of the said Walter K. Wooden), is authorized to use of my estate a sum of money not exceeding $250 annually for such support, maintenance, and education. This my grandson has not heretofore had the benefit of proper influence and education, and I desire that he should have a better chance for his morals, his manners, and his character.

"4. Upon and after the decease of my said son, John M. Kerr, and upon my grandson, Walter K. Wooden, attaining the age of 21 years, which, if he lives, will be in April, 1888, then, if in the judgment of said trustees or the survivors of them the said Walter shall be of good habits and fair character, I hereby authorize, empower, and direct my said trustees or the survivors of them to convey, assign, transfer in fee-simple, for his own use and benefit, to the said Walter K. Wooden, his heirs and assigns forever, the whole property, both real and personal, remaining in their hands under this will and trust; and in case of the decease of both of said trustees before the said Walter becomes of age, then I hereby pray that the surrogate court of that district, or court of equity, do appoint a suitable trustee to take the place of those named, and to discharge the same duty, with the same discretion, under this will and trust."

Defendant Kerr and his son filed their bonds as executors under the will, took possession of all the personal and real property, which was inventoried at $9,245.15, and remained in possession thereof until the death of Alexander Kerr, Jr., in March, 1886, after which time Alexander Kerr remained in possession until October, 1886, when he resigned, and defendant King was appointed administrator, as above stated, in his stead. At the time of the probate of the will Alexander Kerr was 74 years old, and his son not yet 21. The son was evidently the active manager of the estate. He filed an

account in the probate court October 15, 1883. Alexander Kerr filed an account in the name of himself and his son October 9, 1886. This last account was disallowed by the probate court, and no other has since been filed by him. The account of the son does not appear ever to have been acted upon. The mortgage to the defendants Rayner and Tefft was executed by defendant King as administrator under the order of the probate court, for the purpose of paying debts and expenses of administration.

. The cause was heard in open court, and decree entered for the complainant, holding defendant Kerr to be a trustee, directing an accounting, and directing that he transfer the lands to complainant by a proper conveyance. Defendant Kerr alone appealed. The decree sustained the validity of the mortgage to the defendants Kerr and Tefft. It is unnecessary to state the terms of the decree as to defendant King, since he does not appeal.

We think the defendant Kerr is estopped to assert that he was an executor merely, and not a trustee, and that he and his co-executor took possession of and used the property as executors only. The will created the trust, appointed the trustees, and fixed their duties. No action of any court was necessary to complete this trust in them. Had they considered themselves as executors merely, it must be presumed that they would long ago have settled up the estate, and turned the property over to themselves as trustees. Instead, they took possession of the real estate as well as the personal property, and proceeded to carry out the trust as fully and effectually as they could have done if they had not been executors. They filed no account as executors for nearly three years. Equity will not now permit defendant Kerr to refuse an accounting as trustee because the same instrument which

made him a trustee also made him an executor, in which latter capacity he neglected for several years to render an account.

The case of *Cranson v. Wilsey*, 71 Mich. 356, does not aid him. In that case the defendants sought to avoid liability as executors on the ground that they were trustees. In the present case the trustee seeks to defend against his liability as trustee, on the ground that he was an executor. It is immaterial in which capacity he is held, his liability is the same; and where his acts and conduct are entirely consistent with his obligation as trustee, he cannot complain when his *cestui que trust* calls him to an account in a court of equity.

It is no defense to Mr. Kerr that he settled with King as administrator, and paid over to him an amount which he and King agreed upon. It was King's duty to receive from Mr. Kerr any and all property in his hands belonging to the estate; but he could neither bind the estate nor the complainant by any settlement. The probate court alone possessed the power to allow Mr. Kerr's account as executor, and discharge his bond. Complainant alone could settle with him for his doings as trustee.

Complainant purchased the interest of another heir, and on February 25, 1889, presented a petition to the probate court, setting forth that he was interested in the estate of Elias Kerr, deceased, King's appointment as administrator, his doings as such administrator, praying that he be compelled to file his final account, and that the remainder of the estate be turned over to the heirs. Upon the hearing of this petition, Mr. King's final account was allowed, his bond discharged, and the property, including the real estate, turned over to the complainant, who has since been in possession. This does not estop the complainant to require an accounting from defendant Kerr for the moneys and property that

came into his hands. In this accounting he will be allowed for all the money and other property turned over to Mr. King, and all which he expended for the benefit of complainant and the estate. He must account for all received by him, including rents and profits.

We find nothing in the record to justify any charge of dishonesty against defendant Kerr.

Decree affirmed, with costs.

The other Justices concurred.